I would like to emphasize for the court what I think is the central fact here and that is that the affidavit for the search warrant here did not contain any evidence that Mr. Goossens had ordered or downloaded any child pornography. Nor did the affidavit contain the types of facts that were found sufficient in United States v. Gord to support a search warrant when you don't have evidence of actual ordering or downloading of child pornography. That's the bottom line of your argument. The affidavit is the total of what we should look at. Isn't that it? Well, I think the affidavit is always the total of what we should look at. Well, I understand that, but I guess I'm trying to figure out, given that I've read the affidavit, how we get to what you're suggesting to us. I mean, doesn't the affidavit suggest that your client corresponded with a known child pornography distributor via his home computer? Isn't that what it says? No, the affidavit indicates that he engaged in an exchange of e-mails with an e-mail address that was connected to a website that was evidently offering child pornography. Then it says that he received samples via his e-mail containing the pornography. He received links to videos which he indicated in his e-mails that he was unable to open. Well, that's a question. And then he abandoned... And then it says that the files will likely remain on the computer, the affidavit says. And based on what's in the affidavit, they would likely remain on the computer, even if not downloaded. I think with the affidavit, I do not recall the affidavit saying that those links, if not in any way accessed by Mr. Goossens, would remain on the computer. Well, it says computer files are the remnants of recoverable months or even years after they've been downloaded. It also says websites and files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache, making them accessible for future review. Therefore, the judge said, it's possible that the computer files will be retrievable. I think the key words there are downloaded and accessed. What is shown by the e-mail exchange is that he was unable to download or access. It's not clear why. And then the issue is simply abandoned. There's no further indication that he ever was able to download or access, and there's certainly no evidence that he ever placed an order. What's my standard of review for this decision? Your Honor, I believe it's. Well, I believe it's the novel review on a on an issuance of a of this warrant. Yes. As far as the review of the issuing magistrates. Don't I have to give some discretion? You do your what kind of discretion do I need to give? The court's testing me on something I hadn't thought. Well, no, frankly, that's what I have to think about. And maybe it's because I sat in one of these magistrates positions a time or two and saw these good judges up above me reviewing what I then did. And so then I say, what is my standard of review? So what is the standard of review here? I believe it's clear. Yeah. For clear error of the magistrates finding the probable cause. But of course, it's clear error. And I've seen this in the affidavit. Can I say there's clear error in what the magistrate did? That's the bottom line question. Yes. In light of the case law in this circuit. OK. And the best case is Gouard. Gouard and United States versus Weber. OK. And of course, the United States versus Weber was a case where the defendant had actually ordered four pictures of child pornography and had actually received them. And the court held that that was not sufficient to support a warrant for anything more than those four pictures. And this is not a warrant for the alleged links that were coming to him, based upon which he apparently never ordered any child pornography. Let's assume we agree with you that there was no probable cause. The problem I have is the good faith exception. Why doesn't that apply here? Well, Your Honor, I don't think it applies because, again, when these agents seek this affidavit from a magistrate who I assume did not do legal research or wouldn't have had time to be doing legal research at the time that he was looking at this affidavit. The agents are charged with knowledge of the very careful decisions of this circuit, drawing some lines as to when a magistrate can find probable cause. And it's not just whenever something has been put in front of the magistrate that suggests there might be some child pornography on somebody's computer. Gord, Weber, and other cases of this circuit. Well, Weber was before the whole Internet revolution, so. I understand, but I don't see anything. Gord discusses Weber, and Gord is a 2006 case, just two years before this affidavit. And Gord doesn't say, well, Weber was just a pre-computer case. Gord pays very careful attention to Weber and distinguishes it. And the basis on which it distinguishes it is that even in Gord, there was no evidence that the defendant in the affidavit, that the defendant had actually downloaded child pornography. There was evidence that he had signed up for and paid for continuing access to a website that offered a whole lot, access to a whole lot of child pornography. And he was, he had that membership for over two months until the FBI shut the site down. Now, Gord didn't simply say, well, he ordered, he had contact with a website. Therefore, it would not be clear error for the magistrate to have granted this, have found probable cause. Instead, Gord went to great efforts to analyze the extent of the evidence in that case supporting the inference that the defendant, it was probable that the defendant, having subscribed and paid for access, had then followed through and actually accessed some child pornography. Now, this case isn't even close to Gord. This case is a few emails in which there's an expression of interest and an expression of frustration. I can't open your links. And then the matter is dropped. And there's no evidence that he joined a site, that he paid any money, that he actually ordered any child pornography, that any of this was followed up with any continuing interest in child pornography. And I don't know why the court would have written a lengthy opinion in Gord emphasizing the facts that it was relying upon there, the payment for a membership in a child pornography website, if the facts here would readily support a decision that the magistrate's finding should be upheld. Now, Your Honor is asking about the good faith aspect. So if I could get back to that. I think the problem here is that these agents, when they're writing this affidavit, they're charged with knowledge of Weber and Gord to begin with. And I don't think that they, and whatever advice they were getting from a government lawyer perhaps, could have read Weber and Gord as establishing or permitting access to somebody's computer under the limited information they had here. So to begin with, I think this is one of those cases where you look at it and you just say that an objectively reasonable agent, knowing what the case law is in the circuit, knowing that just two years previously we have this opinion from Gord, I do not think that a reasonable agent could have said, this is a legitimate request that we're making. Secondly, I am very troubled by the fact that the agent includes in his affidavit something that is clearly contrary to the teaching of both Weber and Gord in terms of including a section where he sets forth how, in his opinion as an expert, these facts would support a conclusion that the defendant is likely a person who is collecting and hoarding child pornography and is likely using it to perhaps entice children. And so there's this whole litany of things that we can supposedly, based upon the agent's expertise, conclude is likely about Mr. Goossens. But if you compare that part of the affidavit to what Weber says are the necessary foundational facts to be put into an affidavit, if you're going to try to link a particular person who's under scrutiny to what is likely to a category of people who are likely to have done certain things, this affidavit makes no effort whatsoever to do that. So again, I'm concerned about a magistrate who receives this and who, as he's going through it, comes upon this language where this expert in child pornography tells him that this is the type of person that we're probably dealing with here. And the magistrate's not going to have the time. I mean, the agent should know what Weber says about the sufficiency of that type of allegation in an affidavit. But I don't think the magistrate's going to have the time to do a little research and find that Weber says that you can't include this kind of information in your affidavit. I understand your point. Your time is up. Thank you. Good morning. May it please the Court. Justin Rhodes on behalf of the United States. Would you distinguish Gord? Yes, Your Honor. I believe that this case falls squarely within the teachings of Gord. And in fact, there are certain factors about this case which make it even stronger than Gord. As the Court may be aware, in Gord there was no evidence that the defendant there actually accessed what's known as the Lolita Girls website. There was only evidence that he subscribed and paid money. Well, he purchased a membership. He did. That website, in addition, Your Honor, in that case, was what's called a mixed website, which has some child pornography and some legal adult pornography. Here, the Child Porno Video Shop, which is the name of the website that Defendant Goossens accessed, had child pornography and only child pornography. Defendant Goossens accessed the website we know, which we didn't necessarily know in Gord, because he went to the second page, he clicked on the page that said Order Now, and that's where he found the link to the murphyatteacher.com email address. That's how he knew who to contact. He then reached out to that person and said, Please send me a sample. He later said, I want to buy a DVD, but I need to know that your site is legitimate, that it's real, acknowledging that, again, he knew it was a website. And then he claims not to have been able to open these links, but as the affidavit points out, even if he went to the website, there were photos of child pornography on that website, and had he accessed the website, those photos could have been stored in what's known as the Internet cache on his computer, and certainly if he had opened or downloaded the links for the sample videos, all of which the affidavit establishes contain child pornography, those would also be resident on his computer. Now, defense counsel points out that there's a concern about these expert opinions. I think there's a difference between the expert opinion, the boilerplate that was addressed in Weber, which talked about child molesters, pedophiles, and child pornography collectors as this broad, nebulous group. Here, we talk about persons who attempt to receive or receive child pornography. Now, there is no per se rule against an expert opinion talking about this class of people. In fact, in Gord, the affidavit there talked about a class of people who collect child pornography. Now, the reasons that we know that defendant Goossens was a member of that class is that he went to a website that was specifically only child pornography. He said, I want to receive material you have. He clicked through the website he must have to have gotten the e-mail address that he then contacted. And when he wrote to that e-mail address, he didn't say, what is this that you have? I'm interested. Send me something. He said, I would like a sample. He described the genre, if you will, of child pornography. He said oral. There's different kinds. He said the type of file he wanted, an AVI, which is a specific type of video file that he could play on his computer. And then he also said, I want a DVD. I want to purchase child pornography from you, but I'm not going to until you send me a sample. And that indicates that he is aware that the child pornography business operates in an illegal gray world where some of them are fly-by-night operators. Some of them don't have real child pornography. They just advertise it as such. But he said, I want something. And then perhaps the most telling thing that he says is, I want something of quality and length so that I will know. Now, how is someone able to judge whether a movie is long enough and of sufficient quality if he is not the kind of person who collects and receives and views and stores child pornography? Mr. Goossens identified himself as a class of person that is specifically described in the affidavit and then has the communications with a child porno video shop, receives the links, and those links, as the FBI agent stated, all contain child pornography. Thank you. Briefly, I don't think the Court needs to reach the Leon issue of good faith, but I would point out that in this case there are sufficient facts on the face of the affidavit Magistrate LeMong believed that there were sufficient facts, and then Judge Fairbank, after a full briefing of the issue, also agreed. Which is not to say that this Court is not reviewing de novo, but the issue is whether reasonable minds, reasonable legal minds, could differ as to whether or not there was probable cause. And I submit to you that two trained legal minds concluded that there was. And the agent, Special Agent Oliver, at the time, without legal training, concluded that there was as well. If he followed Weber or if he followed Gord, as defense counsel has pointed out he should have, he would have concluded that this case falls much more squarely under Gord and not under Weber, which, again, was not decided since the advent of computers. And the agent, as well as the magistrate, as well as the district court judge, would all reach the conclusion that there is probable cause to search the defendant's house. And probable cause was found, and the warrant was executed. Let me ask you a question. Is it your position, I know it's not here you would suggest this a lot more, but someone, for instance, who got child pornography he didn't want, but thought he had a different website for adult pornography, if he opened it and found that this was not what he wanted and wrote back and said, you're sending this to the wrong person, I am not interested in child pornography, that child pornography would still be on his computer, wouldn't it? It might be, yes. And would that be a basis for a warrant? Because you can find contraband on a computer? I think, again, the fact is not before this court, but I think there would be an issue of whether he knowingly possessed child pornography. Does that matter? If, and all you need is to say that there is child pornography on a computer and you can seize that computer to find that evidence, can't you? Yes, but it would be, it would certainly be overstepping the bounds for the FBI to set up a sting operation where they just email child pornography people and then knocked on the door the next day and said, resident on your computer is an image that we know is child pornography. That is not... That might or might not be that that would be improper governmental conduct or outrageous conduct which is almost never found. But I'm just asking out of curiosity about the theory. I mean, why is it necessary to link the individual to this or to say that he's a bad person who looks at child pornography? Isn't the theory basically that if child pornography can be found at a place, you can obtain a search warrant to seize that child pornography for whatever reason that it leads you to? Again, Your Honor, it's hard to address those facts. I think there is an escape clause in the statute for people who accidentally receive it and then attempt to delete it. Well, that has to do with whether they can be prosecuted. It has nothing to do with whether you can get a search warrant for that, does it? That's true. But if the defendant's email back to the website had been, whoa, you just sent me something which I did not want to receive, then the government would... Then you wouldn't prosecute that person. True. And if there wasn't evidence of a crime... You might still have cause to... Well, somebody committed a crime, whoever sent it to him did. That's true. And there is mention in the affidavit that one of the other bases for search is for distribution by the child porno video shop. We're not relying on that here today, but there would be an argument for that going after the person who sent it to him, in which case I suppose that opens a whole other box of issues about whether the person who sent it would have standing to challenge the search of the innocent receiver's house. All right. Thank you. Thank you very much. Do I have some time to respond to that? He's over. He's over. I'll give you a minute if you want. One minute. But just in terms of the question Your Honor was just asking, first of all, I'd point out again that the United States v. Weber balked at permitting the agents to get a warrant for anything broader than the specific pieces that they believed that he had, but the idea that they could go in and search his whole house. And I think the same principle would apply now, now that we have computers, that if the evidence is only that there are certain, a few images of child pornography on somebody's computer where you don't have the facts that would support the inference that he was a collector or somebody likely to have a lot more images, then you would have a situation where the government could get a warrant, but only for the smaller number of pieces that they had reason to believe were on the computer. And that would particularly apply in a situation where they might have, there's a real possibility they came on to the computer in some innocent fashion, just based on an inquiry or something. Thank you. Thank you, Your Honor. The case just argued will be submitted. The next case on the calendar for oral argument is United States v. Price.
judges: Nelson D. W., Reinhardt, Smith N. R.